UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF MICHIGAN

_____

In re:

WILLIAM S. KUNKEL, JR. and                    Case No. DL 17-05781
JULIE L. KUNKEL,                              Chapter 13
                                              Hon. Scott W. Dales

                    Debtors.
_____/

<u>MEMORANUDM OF DECISION & ORDER</u>

PRESENT:    HONORABLE SCOTT W. DALES
            Chief United States Bankruptcy Judge


Michigan State University Federal Credit Union ("MSUFCU") filed a motion for relief from the automatic stay (the "Motion," ECF No. 18) seeking permission to setoff funds in three certificates of deposit, each titled in the name of chapter 13 debtor Julie L. Kunkel and her minor children (the "Children").  Ms. Kunkel and her co-debtor husband (the "Debtors"), as well as chapter 13 trustee Barbara P. Foley (the "Trustee"), all oppose the Motion.

The court held a hearing on February 1, 2018, in Lansing, Michigan, at which the Debtors and MSUFCU appeared through counsel.  The Trustee also appeared.  No party offered evidence, relying instead on argument and the documents submitted in support of the Motion.  After listening to the parties' arguments, the court took the matter under advisement, and for the following reasons will grant the Motion.

Before turning to the merits of the Motion, a point made during the hearing bears repeating: the current contested matter does not take the place of an adversary proceeding under Fed. R. Bankr. P. 7001 to determine the validity, priority, or extent of any interest in property, but instead is a proceeding, expedited as a matter of statute, to determine whether cause exists to grant relief

from the automatic stay under 11 U.S.C. § 362, or the "co-debtor stay" under § 1301. *See* 11 U.S.C. § 362(e)(1) (stay presumptively terminates 30 days after filing motion for relief unless the court acts to continue the stay, after notice and opportunity for hearing); *In re Wilson-Fields*, Slip Op. Case No. DK 15–00863, 2015 WL 1294137 at *3 (Bankr. W.D. Mich. March 21, 2015) (citing *In re Lebbos*, 455 B.R. 607, 612 (Bankr. E.D. Mich. 2011)). The scope of an order granting relief from the automatic stay is confined to the merits and grounds raised in the motion and has limited preclusive effect because it is entered in "a summary fashion." *Id.*

Returning to the Motion, MSUFCU, as the party seeking relief from the automatic stay, bears the initial burden of establishing a *prima facie* case. *See In re Spencer*, 568 B.R. 278, 280 (Bankr. W.D. Mich. 2017) (*citing In re Holly's, Inc.*, 140 B.R. 643, 683 (Bankr. W.D. Mich. 1992)). Bankruptcy courts generally hold that a creditor who establishes a prepetition right to setoff has made a *prima facie* case for relief from the automatic stay. *See In re Buttrill*, 549 B.R. 197, 205 (Bankr. E.D. Tenn. 2016) (collecting cases). A debtor, trustee, or other party-in-interest, of course, may rebut the moving party's *prima facie* case. In any such dispute, the Bankruptcy Code assigns to the moving party the burden of proof on the question of the debtor's equity in the property at issue; the motion's opponent, however, has the burden of proof on all other issues. 11 U.S.C. § 362(g). Because the Bankruptcy Code does not establish setoff rights, when a creditor seeks stay relief before effecting a setoff the court inquires whether the movant has a colorable right of offset under applicable non-bankruptcy law. *In re Whitaker*, 173 B.R. 359, 361 (Bankr. S.D. Ohio 1994); *United States v. Orlinski (In re Orlinski)*, 140 B.R. 600, 602 (Bankr. S.D.Ga. 1991).

Nevertheless, the Bankruptcy Code does protect and even *favor* setoff rights in a variety of ways. For example, it treats claims that are subject to a right of setoff as "secured" under § 506(a),

and it insulates such rights from most (though not all) of the provisions of Title 11.  *See* 11 U.S.C. § 553(a) (making prepetition setoff rights subject to §§ 362, 363, and 553, but providing that the Bankruptcy Code does not otherwise affect such rights).[1]  Perhaps for this reason, opinions such as *Buttrill* find *prima facie* cause for stay relief in cases involving *bona fide* setoff rights.

Here, the record establishes that in 2006 Ms. Kunkel and her two Children (both minors) opened two accounts at MSUFCU by completing "Lil' Sweet Pea" membership and account applications.  The accounts eventually took the form of three certificates of deposit (the "CDs") in the aggregate face amount of $11,000.00, each a time deposit earning modest interest.  The account documents describe Ms. Kunkel and each of the Children as a "joint party" and state that "[j]oint ownership is in accordance with the joint ownership agreement for the regular share account."  *See* Motion at Exh. C (stated on the face of each CD).  MSUFCU included with its Motion an unsigned document entitled "Membership and Account Agreement,"[2] evidently governing the regular share account of all members – Ms. Kunkel and her Children alike.  Nothing in the Account Documents suggests that the CDs were fiduciary accounts or accounts under the Uniform Transfers to Minors Act, M.C.L. § 554.521 *et seq*., other than the obvious fact of the parent-child relationship between the joint owners.  As a joint owner, Ms. Kunkel has the right to withdraw the funds in the CDs, giving her considerable control over the property, and likely an interest in it.  M.C.L. § 490.61 (governing withdrawal rights from multi-party credit union accounts).

---

[1]Congress has told the courts to adopt a generally "hands-off" approach to unexercised, prepetition setoff rights:

> Except as otherwise provided in this section and in sections 362 and 363 of this title, this title does not affect any right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case under this title against a claim of such creditor against the debtor that arose before the commencement of the case . . ."

11 U.S.C. § 553(a).

[2] The document is attached as Exhibit E to the Motion.  For convenience the court will refer to it as the "Account Agreement."

In accordance with *Citizens Bank of Maryland v. Strumpf*, 516 U.S. 16, 21 (1995), MSUFCU has administratively frozen the CDs, with an aggregate deposit balance of $11,063.46, and now seeks relief from stay in order to offset the entire value of these multi-party accounts against the debt owed on Ms. Kunkel's VISA account. According to the credit union's Proof of Claim, the debt equals $11,068.75 and is unsecured. *See* Proof of Claim No. 2-1; *but see* 11 U.S.C. § 506(a) (treating claims subject to setoff as secured claims).

To meet its *prima facie* case for relief from stay, the creditor cites its Account Agreement, pursuant to which Ms. Kunkel apparently gave MSUFCU a security interest and right of offset in "any account (except IRAs/HSAs) in which you are a primary or joint owner, despite the source of those funds, unless restricted by law." *See* Account Agreement (Exh E) at ¶ 22. The security interest in the CDs -- deposit accounts -- is almost certainly perfected under M.C.L. § 440.9104(1)(a), 440.9312(2)(a), and 440.9314, notwithstanding the Trustee's suggestion to the contrary.

MSUFCU also relies on M.C.L. § 490.361(4), which creates a statutory lien encumbering the CDs, as well as the setoff provision within Michigan's Credit Union Multi-Party Accounts Act -- also referred to in the Account Agreement[3] -- which provides as follows:

> Without qualifying any other statutory right to set-off or lien and subject to any contractual provision, when a party to a multiple-party account is indebted to a credit union, the credit union has a right to set-off against the entire amount of the account.

M.C.L. § 490.64. The last prepetition account statement for the VISA account[4] shows that Ms. Kunkel is "past due," suggesting a default triggering MSUFCU's prepetition setoff rights. With good reasons, therefore, MSUFCU argues that there is cause to grant relief from the stay.

---

[3] *See* Account Agreement at ¶ 4 (stating that joint accounts shall be subject to MCL § 490.51 *et seq.*).
[4] *See* Motion at Exh. B.

In response to this showing, the Trustee and the Debtors contend that the CDs belong to the Children, and therefore the court should not grant relief from the automatic stay or the co-debtor stay of § 1301(a).[5]  If so, the argument continues, there is no mutuality of obligation (as § 553(a) requires) because the Children are not indebted to MSUFCU.  Therefore, according to the Trustee's and the Debtors' arguments, § 553 does not authorize the post-petition setoff.

These arguments, however, prove too much.  It is certainly true that § 553(a) requires mutuality of obligation before authorizing a post-petition setoff, but it is equally true that § 553 does not address setoff rights between non-debtors and their non-debtor depository institutions.  Instead, applicable non-bankruptcy law generally controls when federal law is silent.  *See* 28 U.S.C. § 1652.

Indeed, in enacting the Bankruptcy Code Congress has generally refrained from affecting the rights and obligations under non-bankruptcy law in controversies between two non-debtors.  For this reason, and as a matter of comity, courts generally hold that the automatic stay under § 362(a) does not protect property that does not belong to either the debtor or her bankruptcy estate, and they hesitate to extend any such protections to non-debtors.  *See, e.g.*, *Saleh v. Bank of America (In re Saleh)*, 427 B.R. 415, 420 (Bankr. S.D. Ohio 2010) (declining to extend chapter 13 co-debtor stay to non-debtor entity).

Therefore, crediting the Debtors' and Trustee's assertion that the CDs belong to the Children, and ignoring any presumption to the contrary,[6] it follows that Ms. Kunkel has no equity in the CDs.  Moreover, during the hearing the Debtors did not contend that the CDs are necessary

---

[5] Significantly, the Debtors did not list the CDs in either their original or amended Schedule A/B.  The omission is consistent with their current position, and perhaps with the true state of title.  Given Ms. Kunkel's control over the accounts, however, a more transparent approach to the Debtors' obligations under § 521 would have prompted them to disclose the CDs on Schedule A/B, with an explanation giving their view of the Children's interest in the accounts.
[6] *See, e.g.*, M.C.L. §§ 490.52-54 (creating presumptions of ownership of multi-party credit union accounts).

to their reorganization, only that they belonged to the Children.  11 U.S.C. § 362(g) (burden of proof).  Their argument against granting relief from stay actually points in favor of lifting it.  *See* 11 U.S.C. § 362(d)(2).[7]

In a similar way, the Trustee and the Debtors argue against lifting the co-debtor stay of § 1301(a) by contending, plausibly, that the Children are not co-debtors because they owe nothing to MSUFCU.  Although this is quite likely true, the co-debtor stay does not just apply when a co-debtor is obligated on the debt, but also in non-recourse settings where co-debtors have "secured" a consumer debt by pledging their interests in property as collateral.  *See* 11 U.S.C. § 1301(a) (referring in the disjunctive to an individual that is "liable on such debt" or that "secured such debt").

Here, assuming the CDs belong to the Children as the Trustee and the Debtors contend, creating the CDs as multi-party accounts effectively secured Ms. Kunkel's debt to MSUFCU, triggering the co-debtor stay.  But, as the credit union points out (and as a review of the Debtors' Plan and schedules makes clear),[8] the Debtors have not proposed to pay the credit union's claim in full.  *See* 11 U.S.C. § 1301(c)(2); *Harris v. Fort Oglethorpe State Bank*, 721 F.2d 1052, 1054 (6th Cir. 1983).

The Plan does not identify MSUFCU as a secured creditor, so the court infers that the Debtors propose to treat the lender as unsecured.  According to the schedules and the Plan, holders of general unsecured claims in the aggregate amount of $1,047,898 will share an estimated base dividend of $35,607, roughly a 3% distribution.  Even if only a small fraction of the scheduled

---

[7] Even assuming the Debtors had proposed to use their interest in the CDs to fund the Plan, the accounts would likely qualify as cash collateral that they could not use without first obtaining permission from either the court or MSUFCU, and without providing adequate protection.  11 U.S.C. § 363(a) & (c)(2).  It is difficult to perceive in the schedules any protection the Debtors could offer to MSUFCU or the Children that would be adequate.

[8] The court has yet to confirm the Debtors' chapter 13 plan (ECF No. 5, the "Plan").

unsecured creditors file claims, the Plan obviously does not propose to pay MSUFCU in full. *Id.* Under the circumstances, relief from the co-debtor stay is warranted, even assuming the CDs belong in whole or in part to the Children.

The unseemliness of shucking the "Lil' Sweet Pea" accounts to pay the debts of the Children's mother has naturally caused the Trustee, the Debtors, and the court to balk at the proposed setoff. Indeed, MSUFCU's decision to offer such accounts, and the parents' decision to open them for the Children, are both commendably undertaken to teach the Children a lesson about saving for the future -- and what a lesson it will likely turn out to be. Nevertheless, the court must be guided by statute and case law, rather than any visceral reaction to the harshness of a creditor's proposed course of action. As noted during the hearing, the court is not prejudging the merits or advisability of any future setoff; instead, it simply finds cause to grant relief from the automatic stays under §§ 362(d) and 1301(c) to allow the parties to pursue their state court rights, or not, as they see fit. Certainly, nothing in today's order precludes the Debtors and MSUFCU from agreeing to amend the Plan to accommodate the needs of all interested parties, including the Children.

Finally, the court finds no reason to make its decision immediately effective, so it declines to waive the fourteen day stay that would otherwise apply under Fed. R. Bankr. P. 4001(a)(3).

NOW, THEREFORE, IT IS HEREBY ORDERED that the Motion (ECF No. 18) is GRANTED.

IT IS FURTHER ORDERED that the Clerk shall serve a copy of this Order pursuant to Fed. R. Bankr. P. 9022 and LBR 5005-4 upon William S. Kunkel, Jr. and Julie L. Kunkel, Robert E. McCarthy, Esq., attorney for Debtors, Karen Rowse-Oberle, Esq., James A.

Graham, Esq., attorneys for Michigan State Federal Credit Union, Barbara P. Foley, Esq., Chapter 13 Trustee, and the Office of the United States Trustee (via First Class U.S. Mail).

END OF ORDER

**IT IS SO ORDERED.**

**Dated February 5, 2018**



Scott W. Dales
United States Bankruptcy Judge